# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL LABOR RELATIONS BOARD, ) | |
| ) | |
| Applicant, ) | |
| ) | |
| v. ) | Misc. No. 18-MC-596 (AT) |
| ) | |
| R&S WASTE SERVICES, LLC, WASTE ) | |
| SERVICES, INC., and ECSI AMERICA, INC. ) | |
| ) | |
| Respondents. ) | |

## NATIONAL LABOR RELATIONS BOARD'S LIMITED RESPONSE TO RESPONDENTS' SUPPLEMENTAL MEMORANDUM

### NATIONAL LABOR RELATIONS BOARD

/s/ Michael J. Bilik
Michael Bilik, Field Attorney, Region 2
michael.bilik@nlrb.gov
(212) 776-8665
26 Federal Plaza Ste 3614
New York, NY 10278

Helene D. Lerner, Supervisory Trial Attorney
Tel. (202) 273-3738
helene.lerner@nlrb.gov

Dalford Dean Owens, Trial Attorney
dean.owens@nlrb.gov
(202) 273-2934
Contempt, Compliance, & Special Litigation Branch
1015 Half Street, SE, Fourth Floor
Washington, D.C. 20003

In accordance with the Court's January 8, 2019 Order [Doc. 38], the National Labor Relations Board (the "Board") respectfully submits this limited response to the supplemental memorandum filed by Respondents [Docs. 33, 34] in support of their request that the prejudgment writ of attachment against property of, and a protective restraining order ("PRO") against, Respondents be vacated.[1]

1.     For the first time in its supplemental brief to the Court, Respondents reference a "merger agreement," apparently negotiated and entered into by and between Mr. Spiezio to show that Respondents did not, in effect, transfer R&S Waste assets to Waste Services because all such transfers were "purely internal" [Doc. 34, p. 5]. Respondents never raised the merger in their previous papers and did not cite the merger at the January 3 hearing. Nor have they mentioned the merger in any of several conversations with the Board. Indeed, the Board has found no record of the merger with the New York State Department of State, despite Respondents' recording of the name change from Frontline to Waste Services [Doc 9-6]. The Westchester County Solid Waste Commission has advised the Board that while Spiezio applied to the Commission for review of his purchase of Frontline [Doc. 9-13], he never provided a copy of the merger agreement to the Commission, and has not applied for review of the merger as required by Westchester County law.[2] According to Mr. Spiezio's Affidavit, the merger occurred in 2013. [Doc. 33, p. 2]. His counsel states it occurred in November of 2014 [Doc. 34, p. 5], and

---

[1] With respect to Respondents' compliance with their reinstatement, notice posting and other equitable remedies from the Board's court-enforced orders, the Board never intended to mislead the Court on that issue. Although paragraph 14 of its Application quite inartfully states that neither Rogan Brothers nor R&S Waste had complied with the Orders, it specifically cites to paragraph 72 in Ms. Kurtzleben's affidavit and quotes from it, accurately stating "Respondents have not paid any amounts to satisfy the Board's Orders in Rogan Brothers I or Rogan Brothers II." (See also, Application, paragraph 30, which is accurate). This action has always been about the backpay requirements of the Board Orders and that is what the Board intended to communicate in its moving papers to the Court. The Board regrets any confusion stemming from paragraph 14 in its Application, the content of which was, unfortunately, repeated in its Memorandum in Support.

[2] Licensed waste haulers are required to "apply for review of a proposed purchase, sale or merger transaction by the Commission before acquiring, selling or merging with another business no later than ninety (90) days before such acquisition, sale or merger is to take effect." Westchester Cty., N.Y., Cty. Code, § 826-a.404.

in 2013 [Id., p. 6]. According to the document itself, the merger became effective February 1, 2017 [Doc. 33-1, p. 3] (which was just a few months after the Region advised Respondents it was considering holding R&S Waste responsible for remedial obligations under *Rogan Brothers I*). Given these circumstances, the validity of the document is questionable at best.

Even assuming the merger is valid, it is further evidence Respondents have not only transferred R&S Waste assets, but transferred the entire company with the effect of hindering or delaying the Board. Although Spiezio entered into the merger agreement on November 24, 2013, which was prompted "by the need for [R&S Waste] to avoid its liability" in the ERISA action [Doc. 33-1, p. 2], the agreement did not take effect until February 1, 2017, upon which R&S Waste's separate existence ceased[3] [Doc. 33-1, pp. 2-3]. Indeed, after the Second Circuit's enforcement of *Rogan Brothers II*, Respondents now assert the entire entity of "Terminating Company" R&S Waste was subsumed into the now "Surviving Company" Waste Services, without notice to New York State, the Solid Waste Commission, or the Board, despite Spiezio's testimony to the contrary.[4] Respondents' undisclosed and purported merger has clearly hindered and/or delayed the Board's ability to seek satisfaction of an eventual monetary judgment, by stripping the assets of and/or terminating the separate existence of R&S Waste, the only respondent in this action that was previously named in the Board proceedings.

2.      Respondents' argument that the Board is estopped from alleging Respondents as the *Golden State* successor of Rogan Brothers, based on the administrative law judge's ("ALJ") interim finding that R&S Waste was not the *Burns* successor to Rogan Brothers, is flatly wrong.

---

[3] There is no record with the New York State Department of State showing such termination.
[4] Spiezio testifies the merger and "these facts are public, and known to the NLRB [as] set forth in a Rule 56.1 Statement dated June 27, 2017 […] in *Trustees of Local 813 v. Rogan Brothers et al.*, 12-cv-6249 (ALC), and in required regulatory filings before the [] Solid Waste Commission." [Doc. 33, pp. 3-4 (para. 15)]. Spiezio's Rule 56.1 statement in the ERISA matter makes no mention of any merger, nor Waste Services, nor Frontline. Contrary to Spiezio's testimony, the Board was not aware of any supposed merger agreement, nor apparently was the Solid Waste Commission.

First, Respondents ignore the Board's primary theory of Respondents' derivative liability, which is based on the Board's finding that R&S Waste and Rogan Brothers were a single employer[5] in *Rogan Brothers II*. Indeed, the Board concluded that from March 1, 2011 through October 4, 2011, Spiezio "financially controlled both entities," and "was in complete control of the financial and business operations of Rogan Brothers." *Rogan Brothers II*, 362 NLRB No. 61, slip op. at 4 [Doc. 9-2]. During this period where Spiezio operated R&S Waste and Rogan Brothers as a single employer, the entire unfair labor practice proceeding in *Rogan Brothers I* took place.[6] Based on this timing and Spiezio's concurrent dominion over both R&S Waste and Rogan Brothers, Respondents had an opportunity to be heard in the *Rogan Brothers I* proceedings through Rogan Brothers, and Respondents can be held derivatively liable.

Second, the ALJ's conclusion in *Rogan Brothers II* that R&S Waste was not the *Burns* successor does not bar litigation of R&S Waste's status as a *Golden State* successor. *Burns* and *Golden State* successorship are separate legal determinations whose analytical factors are not congruent.[7] They share only one element: continuity of operations. *See Commercial Forgings Co.*, 315 NLRB 162, 165-66 (1994). The ALJ's interim *Burns* conclusion in *Rogan Brothers II* did not turn on R&S Waste's continuity of Rogan Brothers' operations. Instead, the ALJ 's conclusion was based entirely on the fact that a minority of R&S Waste's workforce consisted of

---

[5] Respondents incorrectly insist the Board found R&S Waste and Rogan Brothers to be a joint employer in *Rogan Brothers II*. The Board's final order concluded R&S Waste and Rogan Brothers were a <u>single</u> employer, with common financial control by Spiezio, interrelated operations, centralized control of labor relations, and common management and supervision. *Rogan Brothers II*, 362 NLRB No. 61, slip op. at 3 [Doc. 9-2]. The distinction is important, because unlike a joint employer, two entities constituting a single employer typically share common ownership and/or financial control, as Rogan Brothers and R&S Waste did here. *Id.*

[6] Region 2 issued complaint in *Rogan Brothers I* on March 23, 2011, Rogan Brothers answered on April 5, 2011, the Region moved for summary judgment on May 13, 2011, and Rogan Brothers' filed its opposition on June 17, 2011; all while R&S Waste and Rogan Brothers were a single employer and Spiezio had control of both entities.

[7] The doctrine of *Burns* successorship imposes a <u>bargaining obligation</u> where a successor employer continues a unionized predecessor's business substantially unchanged and employees of the predecessor are a majority of its employee complement. The doctrine of *Golden State* successorship imposes <u>derivative liability to remedy the predecessor's unfair labor practices</u> on a successor employer that acquired the predecessor's assets with notice of the potential liability. *See e.g. Proxy Commc'ns of Manhattan, Inc.*, 290 NLRB 540, 543 (1988), *enfd.* 873 F.2d 552, 554 (2d Cir. 1989) (finding employer was both *Golden State* and *Burns* successor using different analytical factors).

3

union members. As there was no adverse determination concerning the continuity of operations after R&S Waste's takeover, and the question of Respondents' *Golden State* liability was not "actually litigated," collateral estoppel does not apply here. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979) ("Under the doctrine of collateral estoppel […] judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action").

Accordingly, the Board has stated that a respondent cannot "point to its freedom under *Burns*  . . . as a bar to *Golden State* liability." *Am. Signature, Inc.*, 334 NLRB 880, 884 (2001); *see also Proxy Commc'ns*, 290 NLRB at 543 (successor employer ordered to bargain under *Burns* was also ordered to remedy predecessor's unfair labor practices under the *Golden State* doctrine); *see also Jarm Enters.*, 785 F.2d 195 (7th Cir. 1986) (same).[8]

3.      The relief sought by the Board here is not designed to cause any default on Respondents' existing loans. The Writ of Attachment, once levied on, would establish a lien up to $673,211, but would only "be ranked ahead of any other security interests perfected after the later of the time of levy and the time a copy of the notice of levy is filed . . ." 28 U.S.C. § 3102(f)(2) – thus it would not supplant any preexisting liens. Similarly, paragraph IV of the PRO expressly allows Respondents to "expend funds . . . to satisfy federal, state, county, and local taxes or bona fide liens of record recorded prior to the entry of [the] Order." Of course, the Board would be amenable to a necessary modification of the PRO to ensure Respondents are not placed in a position of defaulting on legitimate business loans.

---

[8] Even assuming a *Burns* conclusion could preclude a subsequent *Golden State* finding (which it cannot), it would be inapplicable in this case because the Board in *Rogan Brothers II* did not adopt the ALJ's *Burns* successorship finding. As a threshold issue, the Board found Rogan Brothers' union contract unenforceable, thus no bargaining obligation could be imposed on R&S Waste through a *Burns* finding or otherwise. *See Rogan Brothers II*, 362 NLRB No. 61, slip op. at 1 [Doc. 9-2]. Therefore, the Board never passed on that issue.

4.       Finally, if the value of R&S and Waste Services "has increased ten-fold" as they suggest [Doc. 34, p. 6], then it is difficult to understand why Respondents are so averse to providing the Board with some form of security until the underlying compliance proceedings are fully litigated. And, given Respondents' conduct to date, the Board has no guarantee that Waste Services and its plentiful assets will remain with the same identity, or will "merge" into or become another entity altogether.   The parties can vigorously disagree on the merits to be litigated before the administrative law judge, and if Respondents ultimately prevail, their security will be returned. The fact remains, however, that the Board has a pending claim against Respondents for a substantial debt to a federal government agency. Pending the outcome of those proceedings, Section 3101 of the FDCPA requires prejudgment relief in order to ensure that the named Respondents will have the financial ability to satisfy that debt.

Respectfully submitted,

NATIONAL LABOR RELATIONS BOARD

 /s/ Michael J. Bilik
Michael Bilik, Field Attorney, Region 2
michael.bilik@nlrb.gov
(212) 776-8665
26 Federal Plaza Ste 3614
New York, NY 10278

Helene D. Lerner, Supervisory Trial Attorney
Tel. (202) 273-3738
helene.lerner@nlrb.gov
Dalford Dean Owens, Trial Attorney
dean.owens@nlrb.gov
(202) 273-2934
Contempt, Compliance, & Special Litigation Branch
1015 Half Street, SE, Fourth Floor
Washington, DC 20003

Dated January 10, 2019

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **NATIONAL LABOR RELATIONS BOARD,**     ) | |
| )    | |
| **Applicant,**    ) | |
| )    | |
| **v.**    ) | **Misc. No. 18-MC-596 (AT)** |
| )    | |
| **R&S WASTE SERVICES, LLC, WASTE**    ) | |
| **SERVICES, INC., and ECSI AMERICA, INC.**    ) | |
| )    | |
| **Respondents.**    ) | |
| )    | |

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was filed using the Court's CM/ECF filing system this 10th day of January 2019, which will send an electronic notice to all registered parties and counsel.

**NATIONAL LABOR RELATIONS BOARD**

 /s/ Michael J. Bilik
Michael Bilik, Field Attorney, Region 2
michael.bilik@nlrb.gov
(212) 776-8665
26 Federal Plaza Ste 3614
New York, NY 10278